CHOATE PUBLISHING COMPANY et al., Appellants, v. E. A. SCHADE, County Auditor, Appellee.

No. 44415.

JUNE 21, 1938.

Cook & Cook, for appellants.

Genung & Genung, for appellee.

MITCHELL, J.—This action was commenced against E. A. Schade, the duly elected, qualified and acting Auditor of Mills County, by the Choate Publishing Company (a co-partnership operating under the trade name of Glenwood Opinion-Tribune); Lena Bays Gater (operating under the trade name of Silver City Times); and Allen Wortman, administrator of the estate of W. P. Wortman, deceased, (engaged in publishing and operating under the trade name of The Malvern Leader), all three of which are the official newspapers of Mills County, Iowa, praying that an order for a writ of mandamus issue, requiring the County Auditor of Mills County to perform his duties as required by sections 5411 and 5412-a1 of the Code, and furnish to the official newspapers of Mills County the record of the proceedings of the board of supervisors of Mills County, Iowa, respecting the allowance or disallowance of homestead exemptions numbered from 1 to 1462, claiming that said record forms a part of the meeting of said board and the proceedings thereof, of June 23, 1937, and that there should be published in the official newspapers the names of all applicants for homestead exemption, the legal description of the claimed homesteads, and the assessed values thereof, and whether said application was granted or denied.

There was an answer filed by the County Auditor, in which he set up that he published the entire record made by the board of supervisors of Mills County, Iowa, in connection with the homestead exemptions, by publishing in the official papers the following: "Homestead exemptions 1 to 1462 were approved by the Board." The lower court refused the writ, and plaintiffs have appealed.

In the case at bar the homestead exemption act created by chapter 195 of the Acts of the Forty-seventh General Assembly is new. The chapter itself covers approximately seven pages of

the legislative acts. The portion, however, that applies to the homestead exemptions is very largely covered by sections 3, 4 and 11 of that act.

Section 4, amending section 6943-f64, Code of 1935, is repealed and the following enacted in lieu thereof: 

"1. The homestead credit fund shall be apportioned each year as hereinafter provided so as to give a credit against the tax on each eligible homestead in the state, as defined herein; the amount of such credit to be in the same proportion that the assessed valuation of each eligible homestead in the state in an amount not to exceed $2,500.00 bears to the total assessed valuation of all eligible homesteads in the state in an amount not to exceed $2,500.00 for each homestead.

"2. The revenue distributable from the homestead credit fund, as provided for in paragraph four of section 6943-f63 as provided herein, shall be allocated every six months to the several counties of the state in the same proportion that the assessed valuation of all eligible homesteads in each county in an amount not to exceed $2,500.00 for each homestead, bears to the total assessed valuation of all eligible homesteads in the state in an amount not to exceed $2,500.00 for each homestead. On March 25, 1938, and every six months thereafter the board shall certify and remit to the county treasurer of each county in the state the total amount of money which has been apportioned or is then apportionable to that county.

"3. On October 1, 1937, and annually thereafter, the board shall estimate the millage credit not to exceed twenty-five mills to be given to each dollar of eligible homestead valuation based upon the estimated revenue that may be distributable from the homestead credit fund for the ensuing year, and shall certify to the county auditor of each county such millage credit and the amount in dollars thereof. Each county auditor shall then enter such credit against the tax levied on each eligible homestead in each county and payable during the ensuing year, * * * Each county treasurer shall show on each tax receipt the amount of credit received from the homestead credit fund. * * * "

Section 11 is as follows:

"Any person who is the owner of a homestead, as defined in this act, and who desires to avail himself of the benefits pro-

vided hereunder for the 1936 taxes payable in 1937 and for the 1937 taxes payable in 1938 may do so by filing a verified statement with the county auditor of the county in which the claimed homestead is located on or before June 1, 1937, and the claim of the owner must be supported by the affidavits of (at least two disinterested free holders of the taxing district in which the claimed homestead is located. * * * ''

In this case the claims and applications for homestead exemptions were on file by June 1, 1937. The record shows that the board of supervisors of Mills County passed upon each individual application, numbered 1 to 1462, both inclusive, and allowed and approved them on the 23d day of June, 1937. Following that the county auditor published in the official papers the record the board of supervisors made, to wit:

''Homestead applications, numbers 1 to 1462, were approved by the board.''

Nowhere in the statute is it made mandatory on the county Auditor to publish the applications, numbers, names, descriptions of property and valuation placed thereon. The only provision found for the publishing of any of the facts of the proceedings of the board of supervisors is contained in section 5411 of the Code, which is as follows:

''5411. What published. There shall be published in each of said official newspapers at the expense of the county during the ensuing year:

''1. The proceedings of the board of supervisors, excluding from the publication of said proceedings, its canvass of the various elections, as provided by law; witness fees of witnesses before the grand jury and in the district court in criminal cases; the transcripts of justices of the peace, including their proceedings and cost; the county superintendent's report.

''2. The schedule of bills allowed by said board.

''3. The reports of the county treasurer, including a schedule of the receipts (and expenditures of the county.

''4. A synopsis of the expenditures of township trustees for road purposes as provided by law.''

In the homestead exemption (act itself, section 11, which is set out in this opinion, the legislature specified the only notice

necessary when it provided that the notice in case of disapproval should be given in writing to the claimant, by mailing same to his last known post office address. That was in the event of the disallowance or disapproval of the application. There is no provision for notice generally to the public of any specific act with reference to any of the applications, so that when the Auditor (appellee herein) published the fact that these applications from 1 to 1462 had been allowed there was a compliance with the statute on the question of publication of the proceedings of the board of supervisors.

We are not here confronted with a case in which no notice was published and we do not therefore pass upon the question of whether it is necessary to publish anything in regard to the proceedings of the board of supervisors, concerning the homestead exemption act. The record shows that the proceedings of the board and the minutes made in the board's record were as follows:

"Homestead exemptions 1 to 1462 were approved by the Board."

The statute says that: "the proceedings of the board of supervisors * * * shall be published." Therefore, when the county auditor published the statement he did publish, there was a substantial compliance with the provisions of the statute.

If the board of supervisors of Mills County and of the other ninety-eight counties of Iowa were compelled to publish what the appellants now argue they be required to publish, the expense would run into the hundreds of thousands of dollars. It is inconceivable that the legislature could have had any such thought in mind. The homestead exemption act was passed for the benefit of those owning homesteads thruout the state. If several hundreds of thousands of dollars were required to publish these notices, that amount would have to come out of the pockets of the owners of these homesteads thruout Iowa. No possible advantage could come to the people of this state by the requirement of this large expenditure of money. And, before this court would place upon the statute the interpretation sought by appellants there will have to be written into the act the specific requirement to set out details in the publication, as sought in this case. We have too much respect for the wise and sound judgment of the legislature to believe that it would ever

require such an extravagant expenditure of public money and such a useless and foolish thing.

It necessarily follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

The CHIEF JUSTICE, and ANDERSON, KINTZINGER, DONEGAN, HAMILTON, RICHARDS, and SAGER, JJ., concur.

MILLER, J., takes no part.